CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
for Ch'ville
AUG 0 2 2006
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

WILLIAM VERRINDER

          *Plaintiff,*

v.

RITE AID CORPORATION,

          *Defendant.*

CIVIL ACTION NO. 3:06-CV-00024

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on the motion of Defendant Rite Aid Corporation ("Rite Aid") to dismiss Plaintiff's Amended Complaint, filed on June 8, 2006.[1] For the following reasons, this motion shall be granted in part and denied in part.

**I**

Plaintiff William Verrinder ("Verrinder") filed suit on May 1, 2006 against Rite Aid alleging defamation and defamation per se. He subsequently amended his complaint on May 20, 2006, stating further allegations of defamation and defamation per se. According to the Amended Complaint, Verrinder worked as a pharmacist at a Rite Aid in Staunton, Virginia. During his tenure there, he complained about other employees to Linda Hall, a human resources manager for

---

[1] Also before the Court is the Defendant's motion to dismiss Plaintiff's original complaint. The arguments in that motion were incorporated by reference into Defendant's motion to dismiss the amended complaint, and therefore the Court will refer only to the motion to dismiss the amended complaint.

1

Rite Aid, and in so doing, discussed with her the condition of a pharmacy patient, whom he described only as "this guy." Hall and Mark Owens, a pharmacy development manager, later sent Plaintiff a written notice stating that he had violated the Health Insurance Portability and Accountability Act ("HIPAA") through this conversation. The notice also stated another employee had complained about Verrinder because of an exchange that may have been overheard by other associates and customers where he referred to the employee's prescription as "happy pills." All of Verrinder's sixteen counts of defamation and defamation per se spring from the publication to other Rite Aid officers and employees of either this HIPAA violation notice or the statement "Bill violated HIPAA."

Rite Aid now moves to dismiss, arguing that the statement at issue is not defamatory, that it is not defamatory per se, that it was not published for purposes of Virginia law, and that it is protected by a qualified privilege.

## II

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint and does not resolve contests concerning the facts, the merits of claims, or the applicability of defenses. *See Randall v. United States,* 30 F.3d 518, 522 (4th Cir. 1994). Such motions "should be granted only in very limited circumstances," *Rogers v. Jefferson-Pilot Life Ins. Co.,* 883 F.2d 324, 325 (4th Cir. 1989), and a complaint will survive as long as it sets out sufficient facts for the court to infer that each element of a cause of action is present. *See Wolman v. Tose,* 467 F.2d 29, 33 (4th Cir. 1972). In considering a Rule 12(b)(6) motion, the complaint is to be construed in the light most favorable to the plaintiff and the court is to assume its factual allegations to be true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *Martin Marietta v. Int'l Tel. Satellite,*

991 F.2d 94, 97 (4th Cir. 1992). "A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 328 (4th Cir. 1996) (*en banc*).

The elements of defamation under Virginia law are: (1) a publication about the plaintiff; (2) an actionable statement; and (3) the requisite intent. *Ramey v. Kingsport Publishing Corp.*, 905 F. Supp. 355, 358 (W.D. Va. 1995); *Chapin v. Greve*, 787 F. Supp. 557, 562 (E.D. Va. 1992). To be actionable, a statement must be both false and defamatory. *Id.* A defamatory statement must be more than unpleasant or offensive, but must make the plaintiff appear odious, infamous, or ridiculous. *Id.* A statement may be defamatory per se, however, where it prejudices a person in his business or trade, and specifically where it relates to the skills or character needed in that occupation. *Swengler v. ITT Corp. Electro-Optical Prods. Div.*, 993 F.2d 1063, 1070-71 (4th Cir. 1993) (citing *Fleming v. Moore*, 221 Va. 884 (1981)). A statement is also defamatory per se if it imputes to the plaintiff the commission of an offense involving moral turpitude for which he may be indicted and punished; an infection with a contagious disease which would exclude him from society; or unfitness to perform the duties of an office or employment for profit, or want of integrity in the performance of those duties. *Great Coastal Express v. Ellington*, 230 Va. 142, 146-47 (1985). An offense involving moral turpitude may be one which imputes the commission of a crime punishable by imprisonment, *Schnupp v. Smith*, 249 Va. 353, 360 (1995), as well as one regarded by public opinion as involving moral turpitude. *Great Coastal Express*, 230 Va. at 147.

Rite Aid argues that neither the notice of HIPAA violation nor the statement "Bill

3

violated HIPAA" is defamatory. It is well accepted that allegedly defamatory words are taken in their plain and natural meaning, and that meaning cannot be extended by innuendo beyond its ordinary and common acceptation. *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 7-8 (1954). Here, the statement that "Bill violated HIPAA" does not make the plaintiff appear odious, offensive, or ridiculous. Assuming that the hearer would understand this to mean that Plaintiff disclosed confidential medical information without authorization, the statement does not rise to the level of offensiveness needed to qualify as defamatory in Virginia. Similarly, the statements in the notice of HIPAA violation, while they do not show Plaintiff in the most favorable light, are not so grave or offensive as to rise to the level of infamy. Hence, Plaintiff's claim for defamation must be dismissed because the statements at issue are not defamatory.

Rite Aid argues that Plaintiff's claims for defamation per se must also be dismissed. Specifically, Defendant argues that a violation of HIPAA is not a crime of moral turpitude or a crime punishable by imprisonment, nor does such a violation impute that Plaintiff is unfit to perform the duties of employment or prejudice him in his profession. The parties have spent significant energy arguing whether a violation of HIPAA is in fact a crime punishable by imprisonment. The Court need not reach this argument in order to find that Plaintiff's allegations are sufficient to state a claim for defamation per se. The statements that "Bill violated HIPAA" and that he disclosed confidential patient information prejudice him in his profession as a pharmacist by impugning his ability to maintain the confidentiality of medical information. Discretion is an important trait in any medical professional, and a claim that a pharmacist has violated HIPAA or disclosed patient information is to some degree comparable with a claim that an attorney has acted unethically or a doctor has made improper advances toward his patients.

4

*See Fleming v. Moore*, 221 Va. 884, 890 (1981). All of these claims, which might be merely insulting to a layperson, become actionable when applied to certain professionals because they bear directly on how the individuals at issue will be seen in the performance of their jobs. Hence, the Court holds that the statements that Plaintiff violated HIPAA or disclosed patient information prejudice him in his profession and are thus defamatory per se.

Rite Aid further argues that even if the statements at issue are actionable, they were not published. Publication is an essential element of defamation and requires the uttering of slanderous words to some third party so as to be heard and understood by that third party. *Thalheimer Bros. v. Shaw*, 156 Va 863 (1931). In arguing this point, Rite Aid relies *Cobb v. Rector and Visitors of the University of Virginia*, 84 F. Supp. 2d 740, 750 (W.D. Va. 2000), in which this Court held that no publication occurs under Virginia law when a defamatory statement is communicated only between persons within a corporate entity who have a duty and interest in the subject matter.

Some months after *Cobb* was decided, however, the Virginia Supreme Court clarified the law on this issue. In *Larimore v. Blaylock*, the court rejected the defendant's arguments that statements "published only to persons within a corporate entity having a duty and interest in the subject matter of the communication, have not been 'published' for defamation purposes." 259 Va. 568, 573 (2000). The defendants there had sought to argue, as the defendant in this case does, that they were protected by a form of intra-corporate immunity because all of the defamatory statements they had made remained within the corporate entity for which they worked. *See id.* The Virginia Supreme Court rejected this argument, noting that under these circumstances, the defendants were merely entitled to a qualified privilege. *Id.* at 573-74.

5

Case 3:06-cv-00024-NKM-BWC    Document 47    Filed 08/02/06    Page 5 of 9    Pageid#: 353

*Larimore* did not overrule *Chalkley v. Atlantic Coast Line R. Co.*, 150 Va. 301 (1928), or *Montgomery Ward & Co. v. Nance*, 165 Va. 363 (1935), the cases on which *Cobb* relied. Rather, the Virginia Supreme Court examined these cases and determined:

> The thrust of these cases is that employment matters are occasions of privilege in which the absence of malice is presumed. . . . We find nothing in these cases to suggest, as the defendants contend, that all transmissions of defamatory statements between members of the corporate entity are entitled to absolute immunity. Furthermore, no case subsequently decided by this Court has resolved defamation claims involving employees of a corporate entity by utilizing the concept of absolute immunity suggested by the defendants.

*Id.* at 574-75. In addition, the court also held that this privilege is lost if the plaintiff proves the defamatory statements were made maliciously. *See id.* at 575-76; *Fuste v. Riverside Healthcare Ass'n*, 265 Va. 127, 134 (2003). Hence, it is clear in the wake of *Larimore* that the effect of communications within a corporate entity is subject to a qualified privilege analysis, and therefore Defendant's argument as to publication fails, as the issue is subsumed within the qualified privilege question.

As noted above, statements made within a corporate entity or between co-employees and employers regarding employee discipline or discharge may be protected under a qualified privilege where the hearers had some duty or interest in the action. *Larrimore v. Blaylock*, 259 Va. 568, 572 (2000); *Montgomery Ward Co. v. Nance*, 165 Va. 363, 378-80 (1935). Where the hearer had no duty or interest in the communication, the statement is not protected by the privilege. *Id.* Here, Verrinder argues that the notice of HIPAA violation and the statement that he violated HIPAA were published to numerous Rite Aid officers. Of those officers, however, he only claims that two– Chris Watson and Brandi Greenawalt– had no duty or interest in the information. The Amended Complaint discloses that all the other recipients of the information

6

had some interest in it. Hence, the publication of the statements to all of the Rite Aid employees except Watson and Greenawalt are entitled to a qualified privilege.[2]

Clear and convincing evidence of malice, however, can defeat the qualified privilege. *See Larimore,* 259 Va. at 575-76; *Fuste v. Riverside Healthcare Ass'n,* 265 Va. 127, 134 (2003). *Accord Montgomery Ward Co. v. Nance,* 165 Va. 363, 380-82 (1935). At this early stage in the proceedings, only a sufficient allegation of malice is necessary. *See Wuchenich v. Shenandoah Mem. Hosp.,* 215 F.3d 1324, **16 (4th Cir. 2000) (unpublished) (holding that the defendant's claim of immunity under a statute protecting reports to the State Board of Medicine did not protect the defendant "at the early dismissal stage of litigation because the complaint clearly alleges that [defendant] engaged in defamatory conduct in bad faith and with malicious intent.") Although conclusory statements of malice are insufficient to overcome a claim of qualified immunity, a plaintiff can survive a motion to dismiss by alleging facts showing some greater pattern of animus by the defendant. *See Echtenkamp v. Loudon County Pub. Schools,* 263 F. Supp. 2d 1043, 1062 (E.D. Va. 2003) (holding that the plaintiff properly pleaded malice when his complaint alleged facts indicating a larger pattern of retaliation against the plaintiff); *Conley v. Town of Elkton,* No. 5:04cv00030, 2005 U.S. Dist. LEXIS 2602, at *34 (W.D. Va. Feb. 22, 2005) (holding that the allegations in the plaintiff's complaint sufficiently alleged malice where it described the defendant's various attempts to discredit the plaintiff and asserted that the defendant made a statement out of hatred or a desire to injure the plaintiff.)

---

[2]Defendant also argues that Watson and Greenawalt had an interest in Plaintiff's discipline. On a motion to dismiss, the Court must accept as true the factual allegations made in the complaint. Defendant's arguments raise questions of fact which are not appropriate at this stage in the proceedings and which will likely require some discovery to resolve.

In this case, the Plaintiff sufficiently alleges malice to overcome a motion to dismiss. The parties have spent some effort arguing what degree of malice must be shown, and whether the intermediate level known as *New York Times* malice suffices. This question is academic because the Amended Complaint states a sufficient basis for the existence of common-law malice. Specifically, the Amended Complaint alleges that Hall and Owens acted out of spite, ill-will, and a desire for revenge against Plaintiff because he had reported Hall to her supervisor and to the Equal Employment Opportunity Commission. He alleges that he suffered racial and sexual harassment while working at Rite Aid and when he reported it, Hall retaliated against him and threatened and insulted him. Plaintiff's complaint further alleges in detail some of the exchanges between Plaintiff and Hall and Owens. *See* Amended Complaint, at ¶ ¶ 55-63, 77, 78, 81, 112, 114. The Amended Complaint pleads facts showing a pattern of animus against Plaintiff by Hall and Owens, and thus makes a sufficient showing of malice to overcome a motion to dismiss based on qualified immunity. Of course, at this early stage of the case the Court must accept as true all factual allegations, and the ultimate burden will remain on Plaintiff to prove malice by clear and convincing evidence.

In sum, Plaintiff has sufficiently alleged defamation per se, and that either the statements made by Hall and Owens were not protected by the qualified privilege or that they acted with sufficient malice to overcome the privilege. Plaintiff, however, has failed to show that the statements made him appear odious, infamous, or ridiculous, and therefore Count 1 of the Amended Complaint must be dismissed. This case will proceed only on Plaintiff's defamation per se claims. Defendant's motion to dismiss is therefore granted in part and denied in part.

An appropriate order shall issue this day.

8

ENTERED: /s/ Norman K. Moon
U.S. District Judge

Aug. 2, 2006
Date